**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000271**
**27-OCT-2025**
**08:17 AM**
**Dkt. 60 SO**

NO. CAAP-23-0000271

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CAROLINE KOLB, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FFC-22-0000958)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Caroline Kolb (**Kolb**) challenges her conviction for Abuse of Family or Household Member (**Abuse**). We vacate and remand for a new trial.

Kolb appeals from the March 9, 2023 "Judgment of Conviction and Sentence; Notice of Entry" (**Judgment**) and from the May 22, 2023 "Findings of Fact, Conclusions of Law, and Verdict," (**FOFs/COLs**) both filed and entered by the Family Court of the First Circuit (**Family Court**).[1] Following a bench trial,

---

[1] The Honorable Peter C.K. Fong presided.

Kolb was convicted of one count of Abuse against her husband, John Kolb (**John**), in violation of Hawaii Revised Statutes (**HRS**) § 709-906(6).[2]

On appeal, Kolb contends the Family Court erred by administering a deficient Tachibana[3] colloquy. Kolb also challenges the sufficiency of the evidence to support her conviction.[4]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Kolb's points of error as follows.

At the time of the alleged incident, Kolb and John lived together with their children at their residence at Joint Base Pearl Harbor-Hickam. Kolb filed for divorce in October 2022. On November 6, 2022, at around 2:00 p.m., John and Kolb's discussion of the division of marital assets and child custody escalated into a heated argument, during which John claimed that Kolb struck him on his right temple with a frying pan. Kolb denied hitting John on the head.

---

[2] The State's December 14, 2022 complaint alleged that Kolb committed Abuse when Kolb "intentionally or knowingly str[uck], shove[d], kick[ed], or otherwise touch[ed] John . . . in an offensive manner, and/or intentionally or knowingly subject[ed]" John "to offensive physical contact" on or about November 6, 2022.

[3] Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995).

[4] Because we are vacating and remanding for a new trial, we do not address Kolb's remaining three points of error that: the Family Court "erred in precluding the defense from adducing testimony regarding John's character for truthfulness"; "[t]he errors and omissions by Trial Counsel constituted ineffective assistance of counsel"; and the Family Court "erred in denying Dr. Kolb's motion to compel the military police [(**MP**)] and [emergency medical services (**EMS**)] reports," under circumstances where John "testified to alleged statements made by the MPs and EMS personnel" on direct examination, and the Family Court "referenced John's version of the MP investigation in its FOFs."

John testified that he then left the home and called military 911; a fire truck, ambulance, and the MP responded. John testified that emergency medical technicians (**EMTs**) provided him with an ice pack for his head injury and asked him if he would like to be taken to the hospital, which he declined. John claimed the MP conducted an over one-hour-long investigation, after which the MP did not arrest Kolb, but recommended a "72-hour cooling off period." Later that evening at around 7:00 p.m., John took a photo of the injury on his forehead with his cellphone, which was submitted into evidence. The following day on November 7, 2022, John reported the incident to the Honolulu Police Department (**HPD**), and HPD Officer Matthew Valdivia (**Officer Valdivia**) took John's statement. Officer Valdivia did not observe an injury "consistent with being hit on the head with a frying pan" on John, and he did not visit the scene of the incident, or collect any evidence.

Two of Kolb's neighbors, Adam Bentz (**Bentz**) and Ashley Powers (**Powers**), testified for the defense. Powers testified that on the evening of the alleged incident when John came to her house to pick up his children, she did not "notice any visible injuries" to John. Bentz, who worked as the "staff judge advocate" for the United States Air Force, testified that in his opinion, "[Kolb] is a very truthful person," and that on the day of the alleged incident, he did not see any injuries on John's face.

Following the Family Court's Tachibana colloquy, Kolb testified that she did not strike John. The Family Court found Kolb guilty and sentenced her to six months' probation. The Family Court's FOFs/COLs explained that this case turned on the

credibility of witnesses, and that it found John credible and Kolb not credible, as follows:

> The only two parties who [witnessed the incident] were [John] and [Kolb]. . . . [T]his case turns on and requires the Court as the trier-of-fact to determine the credibility of the parties . . . . The Court did find [John] to be credible on the issue of whether [Kolb] hit him on the head with a frying pan, and discredited and did not believe as true [Kolb] and her denial of hitting the victim husband on the head with a frying pan, on the crucial issue of credibility.

Kolb timely appealed.

Kolb argues the Family Court did not properly administer a Tachibana colloquy, and there was no confirmation that her "waiver of her right not to testify" was "knowing, intelligent and voluntary."

We review the validity of a defendant's waiver of the right not to testify under the right/wrong standard. State v. Torres, 144 Hawaiʻi 282, 288, 439 P.3d 234, 240 (2019). Under Tachibana and its progeny, a trial court must engage in an on-the-record colloquy with a criminal defendant to inform the defendant of his or her rights to testify and not to testify, ideally immediately prior to the close of the defense case. 79 Hawaiʻi at 237, 900 P.2d at 1304; Torres, 144 Hawaiʻi at 295, 439 P.3d at 247. A colloquy for such purposes is inadequate if the court merely recites "a litany of rights" and then asks the defendant if he "understood that" without clarifying which right "that" referenced. State v. Pomroy, 132 Hawaiʻi 85, 93, 319 P.3d 1093, 1101 (2014). For a true colloquy to take place, the court must have a "discussion, exchange or ascertainment" that the defendant's waiver of rights to testify or not to testify was made knowingly, intelligently, and voluntarily. State v. Chong

4

Hung Han, 130 Hawai'i 83, 90, 306 P.3d 128, 135 (2013) (citation modified).

Here, the Family Court's Tachibana colloquy "recited a litany of rights[,]" see Pomroy, 132 Hawai'i at 93, 319 P.3d at 1101, and did not clarify which rights it was referring to, as follows:

> [STATE]: The -- the State will request that the Court colloquy Dr. Kolb as to testifying as a witness in her own case.
>
> [THE COURT]: All right.  All right.  (Pause.)
>
> So, anyway, the Court -- what the attorney for the State just referred to is the Tachibana colloquy, so we have to just -- to advise you of your constitutional rights not to testify. Whether you do testify, it'll be at your own risk.  Okay?
>
> So you have a constitutional right to testify in your own defense.  Although you should consult with your -- you should consult with your attorney before deciding whether or not to testify, and it's your personal right to, and so one [sic] can prevent you from testifying, should you choose to do so.  If you do choose to testify, the prosecutor will be able to cross-examine you, and also the Court can also question you.  You also have a constitutional right to testify (sic) and remain silent. If you choose not to testify, the -- this will not be held against you in any way in deciding your case.
>
> If you have not testified by the end of trial, the Court will briefly question you whether -- whether or not this is your personal decision not to testify, and not because anyone's forced you, threatened you, coerced you, and pressured you to do -- to testify.  Do you understand what the Court just advised you of?
>
> [KOLB]: Yes, Your Honor.
>
> [COURT]: And knowing that, do you still wish to testify?
>
> [KOLB]: I do, Your Honor.

The above colloquy lacked an "exchange" or "ascertainment" of Kolb's waiver of her right to not testify, and "[o]nce a violation of the constitutional right to testify [or not to testify] is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt."  Tachibana, 79 Hawai'i at 240, 900 P.2d at

1307 (citations omitted); Han, 130 Hawaiʻi at 93, 306 P.3d at 138.

"Under the harmless beyond a reasonable doubt standard, [a] court must determine 'whether there is a reasonable possibility that error might have contributed to the conviction.'" Torres, 144 Hawaiʻi at 291, 439 P.3d at 243 (citation modified). A "crucial if not determinative consideration" in assessing whether an error was harmless "is the strength of the prosecution's case on the defendant's guilt[,]" i.e., whether the evidence against the defendant was "overwhelming." Id. (citation modified).

Here, the record reflects the evidence against Kolb was not overwhelming. Kolb and John were "the only two parties" to the incident, and the Family Court explicitly stated in its FOFs/COLs that "this case turn[ed] on . . . the credibility of the parties[.]" See State v. Underwood, 142 Hawaiʻi 317, 329, 418 P.3d 658, 670 (2018) (holding that evidence of an offense is not "overwhelming" "when a conviction is largely dependent on a jury's determination as to the credibility of a complainant's testimony" (citation omitted)). Besides John, no other witnesses testified to John's injury. Bentz, Powers, and Officer Valdivia testified that they did not see any visible injuries to John. The photograph admitted into evidence does not appear to reflect any injury.

Accordingly, the Family Court's defective Tachibana colloquy was not harmless beyond a reasonable doubt, and we vacate Kolb's conviction. See Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307.

Before we remand for a new trial, we must consider the evidentiary sufficiency challenge Kolb raised. See State v. Davis, 133 Hawaiʻi 102, 114, 324 P.3d 912, 924 (2014) (requiring

6

review of an evidentiary sufficiency challenge before remanding for a new trial based on trial error).  "Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]"  State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (brackets and citation omitted).  "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  Id. (citation omitted).

Here, John testified that Kolb struck him on his right temple with a frying pan.  Such evidence, viewed in the strongest light for the prosecution, was substantial evidence to establish that Kolb intentionally or knowingly subjected John to offensive physical contact for an Abuse conviction.

For the foregoing reasons, we vacate the March 9, 2023 Judgment and the May 22, 2023 FOFs/COLs, both filed and entered by the Family Court of the First Circuit, and remand for a new trial.

DATED:  Honolulu, Hawaiʻi, October 27, 2025.

On the briefs:

David M. Hayakawa,
Christian Enright,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge